IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SHEILA R. WARFIELD          :      CIVIL ACTION
                            :
        v.                  :
                            :
SEPTA, et al.               :      NO. 10-3023

MEMORANDUM

Dalzell, J.                              May 19, 2011

        Plaintiff Sheila R. Warfield has sued her employer, the

Southeastern Pennsylvania Transportation Authority ("SEPTA"), and

her supervisor, Lorraine McKenzie (collectively, "defendants"),

for employment discrimination.  Specifically, she claims race and

gender discrimination under Title VII (Count I), race

discrimination under 42 U.S.C. § 1981 (Count II), retaliation

under Title VII (Count III), retaliation under 42 U.S.C. § 1981

(Count IV), race and gender discrimination under the Pennsylvania

Human Relations Act ("PHRA") (Count V), retaliation under the

PHRA (Count VI), and violations of her First and Fourteenth

Amendment rights under 42 U.S.C. § 1983 (Count VII).[1]

---

[1]  Because Pennsylvania courts have interpreted the Pennsylvania
Human Relations Act interchangeably with Title VII, our analysis
is the same under these two statutes.  Weston v. Pennsylvania, 251
F.3d 420, 426 n.3 (3d Cir. 2001). The same test is also used for
§ 1981 claims and § 1983 claims.  Whitmire v. Kvaerner Phila.
Shipyard, 340 F. App'x 94, 98 n.1 (3d Cir. 2009) (citing Jones v.
School District of Phila., 198 F.3d 403, 410 (3d Cir. 1999));
McKenna v. Pacific Rail Serv., 32 F.3d 820, 826 n.3 (3d Cir.
1994).  For ease of readability, we will refer to Title VII
throughout this Memorandum, but our analysis is the same under
all four statutory schemes.

Defendants have moved for summary judgment, Warfield responded and included a statement of disputed facts, defendants replied, and defendants responded to Warfield's disputed facts.[2] Defendants contend that Warfield cannot establish a prima facie case for her claims, and that they had legitimate, nondiscriminatory reasons for terminating her employment. Warfield argues that defendants' reasons for firing her are pretextual.

For the reasons we discuss in detail below, we will grant defendants' motion and dismiss Warfield's complaint.

## I.    Factual Background

Sheila Warfield is an African-American woman who began working at SEPTA as an EEO/ER Specialist on July 30, 2007. Compl. ¶ 9-10. At the same time, SEPTA hired the man plaintiff claims is her comparator, Thomas Comber, a white male. Id. ¶ 11. Both Warfield and Comber reported to defendant Lorraine McKenzie, an African-American woman. Id.; Def. Mem. of Law in Sup. Of Mot. for Summ. J. ("MSJ"), Ex. 2, Deposition of Sheila Warfield ("Pl.'s Dep.") at 44:10-14. Although both Warfield and Comber

---

[2] Warfield filed a sur-reply without moving for leave to file it. We disfavor sur-replies, and without a motion laying out good cause for us to grant the request to consider a sur-reply, we will not consider one. Judge Dalzell's Policies and Procedures (Part I). Thus, we will not consider Warfield's sur-reply.

reported to McKenzie, Warfield's position was that of EEOC/ER Specialist, which is a grade 40, while Comber's position was Employee Relations Manager, a grade 41.  Compl. ¶ 12; MSJ, Ex. 4-5; Pl.'s Dep. 50:1-2.

On October 30, 2007, Warfield received her fiscal year 2008 Performance Evaluation.  MSJ, Ex. 10.  She received an overall rating of "meets expectations."  Id.  At that time she had only been in the position for three months.  Pl.'s Dep. at 91:24-92:3.  On April 9, 2008 McKenzie met with Warfield to discuss her work performance.  McKenzie memorialized their discussion in an email that she sent to Warfield on May 16, 2008.[3]  Id., Ex. 11.  In the email, McKenzie concludes that she is "concerned that the high demands of this position are not commensurate with your skills."  Id.

On June 30, 2008, McKenzie asked Warfield to prepare and maintain "daily logs" of her work activities ("Work Flow Logs").  Id., Ex. 12.  Warfield maintained Work Flow Logs from July of 2008 until October of that year.  Id., Ex. 13.  Warfield did not believe that the Work Flow Logs assisted her with time management and believed that they were "time-consuming" and a "hindrance."  Pl. Resp. to Def.'s Facts ¶¶ 25, 27.  With

---

[3]  Plaintiff denies that she met with McKenzie on April 9, 2008. She only concedes that she received the email from McKenzie on May 16, 2008.  Pl. Resp. to Def.'s Statement of Facts ("Pl. Resp. to Def.'s Facts") ¶ 22.

McKenzie's approval, Warfield stopped producing Work Flow Logs after October of 2008.  Pl.'s Dep. at 172:2-14.

On October 24, 2008, Warfield received her fiscal year Performance Evaluation from McKenzie in which McKenzie rated her "below expectations" in nine out of thirteen categories.  MSJ, Ex. 14.  Warfield also received an overall rating of "below expectations."  Id.  That day, McKenzie placed Warfield on a Performance Improvement Plan ("PIP").  Id., Ex. 15.  PIPs are designed to provide a fair and consistent method to formally establish goals and present constructive feedback to employees with significant deficiencies as documented in their Performance Evaluations.  Id., Ex. 16.

McKenzie identified several areas of deficiency in Warfield's performance in her PIP, including lacking attention to detail on her case investigations, errors in grammar, misaligned paragraphs, missing exhibits, grammatically incomplete sentences, struggling to recognize, secure and evaluate relevant facts, and failing to bring important issues to the attention of her supervisor.  MSJ, Ex. 15.  The PIP required Warfield to improve her performance within thirty days.  Id.  It also stated that if Warfield failed to make "immediate and significant improvement," it may constitute grounds for her dismissal.  Id.  McKenzie and Warfield discussed Warfield's PIP on October 24, 2008.  Pl.'s

4

Dep. at 181:14-24. Warfield informed McKenzie at that time that she believed that McKenzie was treating her differently than Comber. Id. at 182:21-23. Warfield submitted a written response to the PIP on November 4, 2008, but it did not suggest that McKenzie treated her differently than Comber, or that she was being discriminated against because of her race or gender. MSJ, Ex. 8.

On November 7, 2008, McKenzie prepared a Performance Improvement Plan Progress Report. Id., Ex. 17. McKenzie noted that she had not received any written work that would allow her to assess Warfield's progress pursuant to the PIP. Id. On December 10, 2008, McKenzie prepared a second PIP progress report in which she notes that "essential aspects" of Warfield's performance remained below expectations. Id., Ex. 18. McKenzie concluded in that progress report that Warfield was not meeting the demands of her job, and therefore she had failed to meet the requirements of her PIP. Id.

Other than in late September of 2008 and on October 24, 2008, Warfield cannot remember any other specific instances where she complained to McKenzie about being treated differently than Comber. Pl.'s Dep. at 135:11-18. Warfield cannot recall a single instance of complaining to anyone at SEPTA that she was

being treated differently than Comber because she was an African-American woman.  Pl.'s Dep. at 147:8-148:12.

On March 5, 2009, McKenzie met with Warfield as part of the mid-year performance discussions and advised Warfield that her performance remained below expectations.  MSJ, Ex. 19. Warfield does not recall that meeting.  Pl.'s Dep. at 240:17-241:2.  On April 8, 2009, "numerous case status entries remained untouched requiring [McKenzie] to assign a staff member to sit down with [Warfield] to conduct a case-by-case review of updates that had not been conducted as required."  MSJ, Ex. 19.  Five days later, McKenzie delivered to Warfield a Notice of Charge/Reasons for Imminent Discharge Pursuant to Policy #E21. Id.  Warfield was charged with "failing to perform any or all aspects" of her job duties and failing to "improve performance outlined in a Performance Improvement Plan."  Id.  Warfield was suspended immediately pending imminent discharge.  Id.

On April 15, 2009, two days after receiving her Notice of Imminent Discharge, Warfield submitted a written response to McKenzie.  Id., Ex. 20.  There, Warfield for the first time reported that she had filed a PHRC complaint on April 1, 2009, but she did not say that she believed she had been discriminated against based on race or gender in this April 15, 2009 document.

Id. Warfield again merely conveyed her general opinion that she been treated differently than Tom Comber.[4] Id.

SEPTA received service and a copy of Warfield's PHRC complaint on April 16, 2009 -- three days after SEPTA suspended her. Id., Ex. 22. Although Warfield alleges that the PHRC called SEPTA before April 16, 2009 to inform it of her complaint, McKenzie never spoke with any PHRC investigator on the phone. Id., Ex. 3, McKenzie Dep. at 166:18-167:3. Until Warfield responded in writing to her Notice of Imminent Discharge, she had never told anyone at SEPTA that she intended to file a complaint with the PHRC and the EEOC. Notably, she did not tell anyone at SEPTA about her PHRC complaint from April 1 to April 15. Pl.'s Dep. at 232:11-233:9. On May 12, 2009, defendants fired Warfield. Compl. ¶ 26.

## II. **Analysis**[5]

---

[4] Her precise words to McKenzie on this point were, "You know and I know that this discharge is part of your continuing retaliation against me for my complaint of discrimination and differential treatment between Tom Comber and me."

[5] Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Whenever a factual issue arises which cannot be resolved without a credibility determination, the Court must credit the non-moving party's evidence over that presented by the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

The moving party bears the initial burden of proving that there is no genuine issue of material fact in dispute.

Defendants move for summary judgment against Warfield on all counts of the complaint, claiming that she cannot demonstrate a genuine issue of material fact to support her claims that defendants discriminated against her because of her gender or race. Warfield claims that McKenzie subjected her to disparate treatment because of her race and gender in her work assignments, manner of communication, work assessment and imposition of disciplinary actions, which were based on false and inaccurate evaluations of her performance, and that McKenzie did not treat Comber the same way.

## A. **Disparate Treatment Discrimination**

Warfield's claims of discrimination arise under Title VII and thus are governed by the familiar burden-shifting

Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585 (1986). Once the moving party carries this burden, the nonmoving party must "come forward with 'specific facts showing there is a genuine issue for trial.'" Id. at 587 (quoting Fed. R. Civ. P. 56(e)). The non-moving party must present something more than mere allegations, general denials, vague statements, or suspicions. Trap Rock Indus., Inc. v. Local 825, 982 F.2d 884, 890 (3d Cir. 1992); Fireman's Ins. Co. of Newark v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). It is not enough to discredit the moving party's evidence, the non-moving party is also required to "present affirmative evidence in order to defeat a properly supported motion for summary judgment." Liberty Lobby, 477 U.S. at 257. A proper motion for summary judgment will not be defeated by merely colorable evidence or evidence that is not significantly probative. See Liberty Lobby, 477 U.S. at 249-50. "[T]he burden on the moving party may be discharged by 'showing'...that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

framework ordained in McDonnell Douglas Corp. v. Green, 411 U.S.

792 (1973).  See also Ezold v. Wolf, Block, Schorr and

Solis-Cohen, 983 F.2d 509, 522 (3d Cir. 1992). To make her claim,

Warfield must first establish a prima facie case of

discrimination.  The burden then shifts to the employer "to

articulate some legitimate, nondiscriminatory reason for the

employee's rejection." McDonnell Douglas, 411 U.S. at 802.

Finally, the plaintiff has an opportunity to prove by a

preponderance of the evidence that the employer's

nondiscriminatory reason is pretextual. Id. at 804; Texas Dep't

Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).

The McDonnell Douglas framework "serves to bring the

litigants and the court expeditiously and fairly to [the]

ultimate question" of whether the defendants intentionally

discriminated against Warfield.  Burdine, 450 U.S. at 253. In

other words, that framework helps courts determine whether

unlawful discriminatory reasons motivated an employer to take an

action against an employee.

Defendants have moved for summary judgment on

plaintiff's disparate treatment claim. To establish a prima facie

case for such a claim, a plaintiff usually must show that "(1)

she is a member of a protected class; (2) she was qualified for

the position she held; (3) she suffered an adverse employment

9

action; and (4) similarly situated persons who are not members of the protected class were treated more favorably, or that the circumstances of her termination give rise to an inference of discrimination." <u>Red v. Potter</u>, 211 Fed. Appx. 82, 83 (3d Cir. 2006).

Although courts often use these factors, they do not constitute a rigid formula. <u>E.E.O.C. v. Metal Service Co.</u>, 892 F.2d 341, 347 (3d Cir. 1990). More generally, Warfield can establish her <u>prima facie</u> case by offering "sufficient evidence . . . such that the court can infer that if the employer's actions remain unexplained, it is more likely than not that such actions were based on impermissible reasons." <u>Id.</u> at 348. The burden-shifting framework, beginning with the <u>prima facie</u> case, offers the plaintiff an indirect way to prove that the employer acted because of unlawful discriminatory reasons. Causation is thus the central question of the <u>prima facie</u> inquiry. <u>See</u> <u>Sarullo v. U.S. Postal Svc.</u>, 352 F.3d 789, 798 (3d Cir. 2003).

Defendants concede the first three factors of the test for the purposes of their motion, <u>i.e.</u>, that (1) Warfield is a member of a protected class, (2) who was qualified for her position as an EEOC/ER Specialist, and (3) her termination was an adverse employment action. MSJ at 10 n.10. The only remaining issue at this stage of the inquiry, then, is whether Warfield has

shown that "similarly situated persons who are not members of the
protected class were treated more favorably, or that the
circumstances of her termination give rise to an inference of
discrimination." Red, 211 Fed. Appx. at 83. In their motion for
summary judgment, defendants contend that Warfield has not done
so, and we agree.

Under the McDonnell Douglas framework, "a prima facie
case ... raises an inference of discrimination only because we
presume these acts, if otherwise unexplained, are more likely
than not based on the consideration of impermissible factors."
Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 352 (3d Cir.
1999) (quoting Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577
(1978)). In other words, the burden-shifting scheme outlined in
McDonnell Douglas is intended to locate a causal connection --
which Warfield must prove -- between impermissible behavior
toward Warfield and her termination. See Sarullo, 352 F.3d at
798.

Warfield contends that Tom Comber is her comparator,
that he had performance issues similar to hers and that he was
not disciplined.  Pl.'s Resp. at 6.  Defendants respond that
Comber is not an appropriate comparator because Warfield and
Comber were not "similarly situated."  MSJ at 10.

The plaintiff bears the burden of establishing that similarly situated individuals were treated differently. <u>Burdine</u>, 450 U.S. at 258. Warfield argues that she and Comber were similarly situated because they were both responsible for conflict resolutions, new hire training, investigation of internal and external equal employment complaints, attending factfinding hearings at external agencies, and (ironically enough) SEPTA's responses to external employment discrimination complaints. But Warfield cites only to her own deposition, in which she conceded that she did not really know what Comber's responsibilities were. Pl.'s Dep. at 53:2-19.[6] To be sure, "similarly situated" does not mean "identically situated," but a plaintiff must generally demonstrate that she was similar to the alleged comparator in all relevant respects. <u>Kosereis v. Rhode</u>

---

[6]  Q:  Do you know what responsibilities Mr. Comber had as the Employee Relations Manager?
    A:  I don't know what his full responsibilities were. I do know that we all shared in our office, since we were a small staff, the same responsibilities at times.
    Q:  Well, tell me what responsibilities you know of that Mr. Comber had as Employee Relations Manager.
    Mr. Abiona:  Objection to the form of the question. It lacks foundation and mischaracterizes the witness' testimony, but you can answer.
    A:  I'm not sure of everything that he did.
    Q:  Anything.
    A:  I think he did conflict resolution. I know he did investigations. He did new hire training. That's all that I know. I'm sure he did more.

<u>Island</u>, 331 F.3d 207, 214 (1st Cir. 2003); <u>Red v. Potter</u>, 211 F. App'x 82, 84 (3d Cir. 2006) (citing <u>Kosereis</u>).

Comber was and is an Employee Relations Manager, not an EEO/ER Specialist as Warfield was. Comber handles internal complaints between employees that do not involve allegations of discrimination, retaliation or harassment. MSJ, Ex. 5. By contrast, Warfield's job duties included investigation of internal and external complaints of discrimination, retaliation and harassment. Pl.'s Dep. at 45:2-5. Comber is not usually assigned to external complaints of harassment or discrimination. MSJ, Ex. 6, Comber Dep. at 31:14-16. Thus, Comber is not a proper comparator for Warfield.

But even if we had concluded that Comber and Warfield had enough of the same responsibilities, the fact that Comber and Warfield may have shared <u>some</u> cognate responsibilities is not enough for us to conclude that the two were "similarly situated" under the law. Here, viewing the facts in the light most favorable to Warfield, she has still failed to show that Comber was treated more favorably in the areas -- if any -- where they had the same performance issues. In determining whether "similarly situated" employees were treated more favorably, we focus on "the particular criteria or qualifications identified by the employer as the reason for the adverse action." <u>Simpson v.</u>

<u>Kay Jewelers</u>, 142 F.3d 639, 647 (3d Cir. 1998).  A plaintiff must establish that the comparator employee's acts were of "comparable seriousness" to her own infractions, and that the employee "engaged in the same conduct without such differentiating or mitigating circumstances as would distinguish the employee's conduct or the employer's resulting treatment of the employee," <u>Tyler v. SEPTA</u>, No. 99-4825, 2002 WL 31965896 * 3 (E.D. Pa. Nov. 8, 2002).

In the Notice of Imminent Discharge, McKenzie wrote that (1) Warfield was "not grasping basic writing and analytical fundamentals," (2) Warfield's work product was "imprecise in areas of grammar, thoroughness of contents, and coherency," (3) she had "difficulty developing SEPTA Position Statements for Regulatory Agencies and other business partners," and (4) there were "unjustifiably long turnaround times and document re-writes" of her work product.  MSJ, Ex. 19. Plaintiff presents <u>no</u> evidence that Comber also had these deficiencies in his work performance. Instead, Warfield suggests that Comber did not have to wear a suit, whereas she did, Comber did not have to complete a Work Flow Log as she did, and McKenzie permitted Comber to take certain classes, whereas McKenzie did not afford Warfield the same opportunities.  Pl. Resp. at 8-10.  These differences are not relevant to the calculus of the treatment of a "similarly

14

situated" comparator. Nor do these differences in treatment reasonably give rise to the inference of discrimination based on race or gender. Thus, we cannot conclude that Warfield and Comber were "similarly situated" for the purposes of the McDonnell Douglas analysis, and we must grant defendants' motion for summary judgment as to any claim of discrimination.

And even if Warfield <u>had</u> established a <u>prima facie</u> case, we agree with defendants that the record amply supports the contention that SEPTA terminated Warfield based solely on her poor job performance. This is a legitimate, non-discriminatory reason for terminating Warfield's employment. Finally, Warfield has failed to demonstrate that SEPTA's reasons were pretextual.

### B. **Retaliation**[7]

---

[7] Plaintiff raises a claim of hostile work environment for the first time in her response to defendants' motion for summary judgment. Pl. Resp. at 8-14. But our Court of Appeals has explained that "[a] plaintiff may not amend [her] complaint through arguments in [her] brief in opposition to a motion for summary judgment." <u>Bell v. City of Philadelphia</u>, 275 F. App'x 157, 160 (3d Cir. 2008)(quoting <u>Shanahan v. City of Chicago</u>, 82 F.3d 776, 781 (7th Cir. 1996))(internal quotation marks omitted); <u>see also</u> <u>Aldinger v. Spectrum Control, Inc.</u>, 207 F. App'x 177 180 n.1 (3d Cir. 2006) (district court properly refused to consider a claim raised by the plaintiff in response to the defendant's motion for summary judgment). But even if Warfield had properly raised a claim of hostile work environment, such a claim requires the plaintiff to show that the defendants' conduct was motivated by animus based on her race or gender. <u>See</u> <u>Oncale v. Sundowner Offshore Services, Inc.</u>, 523 U.S. 75, 80-81 (1998). This she has failed to do. Warfield cites as evidence of a hostile work environment the fact that McKenzie (1) was confrontational with her but not with Comber, (2) made Warfield wear a suit every day

Warfield alleges that she engaged in protected activity and that defendants retaliated against her by giving her an unfavorable performance evaluation, putting her on a Performance Improvement Plan, and then terminating her employment.  Compl. ¶¶ 17-18, 20, 24.

To establish a <u>prima facie</u> case of retaliation, a plaintiff must show that (1) she engaged in protected activity, (2) she suffered an adverse employment action either after or contemporaneously with the protected activity, and (3) there was a causal connection between the protected activity and the adverse employment action.  <u>Red</u>, 211 F. App'x at 84.

Besides protecting the filing of formal charges of discrimination, § 704(a)'s opposition clause in the 1964 Civil Rights Act also protects informal protests of discriminatory employment practices -- including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges. <u>Sumner v. U.S. Postal Service</u>, 899 F.2d 203, 209 (2d Cir. 1990). Generalized complaints about unfair treatment, however, do not

---

but Comber was allowed to come to work wearing a "golf shirt" without incident, (3) did not permit Warfield to participate in certain meetings, and (4) subjected Warfield to "excessive monitoring and micromanagement."  Pl. Resp. at 8-9.  None of these constitutes evidence of a hostile work environment based on either race or gender.

constitute the requisite protected conduct necessary for a prima facie case of retaliation.  Barber v. CSX Distribution Serv., 68 F.3d 694, 701 (3d Cir. 1995).

When asked during her deposition whether she had ever told anyone at SEPTA that she believed she was being discriminated against based on her race or gender, she replied "[n]ot in those words."  Pl. Dep. at 147:8-148:12.[8]  In her

---

[8]  Plaintiff contends that "[w]hen plaintiff complained to Ms. McKenzie about her differential treatment in comparison to Mr. Comber, it was obvious to Ms. McKenzie that Plaintiff was complaining about her race and gender because Plaintiff is black and female and Mr. Comber is a male and Caucasian."  Pl. Resp. at 19 (emphasis added).  In support of her claim that McKenzie "knew and perceived" that plaintiff was complaining about McKenzie allegedly discriminating against her based on her race, Warfield cites a nonsensical excerpt from McKenzie's deposition testimony:

    Q:    ...right?
    A:    Yes.
    Q:    And then you asked her to change that to say: T.
          Comber discussed with the complainant that she had
          filed several reports about different co-workers
          during the past year.  That was the change you
          were asking her to make; is that correct?
    A:    Correct.
    Q:    Okay.  If Mr. Comber in discussing that complaint
          with Ms....

MSJ, Ex. 3, McKenzie Dep. at 147:8-19.  This deposition excerpt appears to be mistakenly cited, but plaintiff provides no other selections from McKenzie's deposition that would lead a reasonable factfinder to conclude that McKenzie "knew" that Warfield felt that she had been discriminated against on the basis of her race or her gender.  Furthermore, "[p]arties may not, by the simple expedient of dumping a mass of evidentiary material into the record, shift to the Court the burden of identifying evidence supporting their respective positions." Preis v. Lexington Ins. Co., 508 F. Supp. 2d 1061, 1068 (S.D. Ala. 2007).

affidavit, Warfield swore that "[w]hen I complained to Ms. McKenzie about her differential treatment in comparison to Mr. Comber, Ms. McKenzie knew that I was complaining about differential treatment because of my race and gender." Pl. Resp., Ex. D ¶ 7. But the only specific facts that Warfield proffers to show that McKenzie "knew" that Warfield was complaining about race and gender discrimination were that McKenzie made the statement "nobody will believe you that I was discriminating against you." Id. Warfield claims that McKenzie said this because Warfield and McKenzie are both African-American women, id., but without more, we cannot view this as proof of the serious charge that McKenzie discriminated against Warfield based on her race and gender.[9] Warfield then claims that in November of

---

[9]  Warfield also claims that when McKenzie conceded that Warfield complained that she was being treated differently from Comber, this was an admission that McKenzie knew that Warfield felt she was being discriminated against based on her race and gender. Pl. Resp. at 21. But simply being "treated differently" is not enough to persuade a reasonable factfinder that McKenzie "knew" that Warfield meant that she was being treated differently because of her race and gender or other invidious reasons. McKenzie testified, "I recall her mentioning his name and saying that she felt she was being treated differently." MSJ, Ex. 3 at 192:6-8. Opposing counsel asked, "[t]hat's all you remember?" And McKenzie responded, "[t]hat's all I remember." Id. at 192:9-10. This vaporous evidence would not allow a reasonable factfinder to conclude that McKenzie "knew" that Warfield felt that she was being discriminated against based on her race and gender. In addition, the fact that Comber referred to himself as "the only male in the department" is simply not relevant to this inquiry.

2008, when she saw an article about same-race discrimination, she left a copy of that article in McKenzie's office door. Id.; Pl.'s Dep. at 218:23-219:4. Warfield claims that this proves that McKenzie knew she was complaining about discrimination based on race. But Warfield cannot say for sure that McKenzie so much as read the article. In fact, Warfield testified that she knew that McKenzie had not read the article when she left it in her door:

> Q:   Do you know for a fact whether or not
>      she read it?
> A:   I think -- at some point -- what used to
>      happen is we had a sticky down at the
>      bottom and everyone's initials were on
>      it. And when you're finished reading
>      it you initial. Hers wasn't initialed when
>      I had it, so that's why I was showing it
>      to her.

Pl.'s Dep. at 219:21-220:3. Warfield's conclusory statements in her affidavit simply will not defeat summary judgment. "[C]onclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment. Instead, the affiant must set forth specific facts that reveal a genuine issue of material fact." Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 161 (3d Cir.2009) (internal citations and quotation marks omitted) (quoting Blair v. Scott Specialty Gases, 283 F.3d 595, 608 (3d Cir.2002)).

Because plaintiff fails to provide any evidence that
(1) she specifically complained about being discriminated against
based on her race or gender, and (2) McKenzie knew that Warfield
felt she was being discriminated against based on those
impermissible criteria, she cannot claim to have engaged in any
protected activity prior to filing her PHRC complaint on April 1,
2009 (in which she specifically alleged race and gender
discrimination).  <u>Ahmed v. Lowe's Home Centers, Inc.</u>, 346 F.
App'x 816, 819 (3d Cir. 2009) (finding that plaintiff did not
engage in protected activity where the record showed that, while
plaintiff did complain to the Human Resources Department about
his manager on at least two separate occasions, plaintiff never
alleged that the manager's treatment of him was based on
plaintiff's race or national origin).

With regard to plaintiff's PHRC complaint, defendants
concede that this is a protected activity.  MSJ at 18.  But
exactly <u>when</u> a defendant learns about the plaintiff's protected
activity is an important consideration in determining whether
there is the requisite link between that activity and a
particular adverse employment action. <u>See</u> <u>Clark County School
Dist. v. Breeden</u>, 532 U.S. 268, 273 (2001).

Warfield filed her PHRC complaint on April 1, 2009, but
she never told anyone at SEPTA that she was going to file the

complaint, nor did she tell anyone at SEPTA before April 13, 2009
-- the day she was notified of her imminent discharge -- that she
had filed it.  MSJ, Ex. 2 at 232:11-233:9.  Plaintiff instead
argues that someone at the PHRC _must_ have notified SEPTA's EEO/AA
office that she had filed a complaint, because it was her
understanding that the PHRC gives "a courtesy call" before
sending out a complaint.  _Id._ at 233:10-234:7.  But Warfield does
not know that anyone at the PHRC ever called anyone at SEPTA
about her complaint, _id._ at 234:18-235:22,[10] and on April 13,
2009 SEPTA notified her of her imminent discharge and suspended
her without Warfield ever having told any SEPTA employee about
the complaint she had filed with the PHRC.  In fact, the first
time that Warfield told anyone at SEPTA about her PHRC complaint
was on April 15, 2009, two days _after_ she received the notice of
her imminent discharge.  MSJ, Ex. 20.  It is undisputed that
SEPTA received a copy of Warfield's PHRC complaint the next day,
on April 16, 2009.  MSJ, Ex. 22.

Warfield argues that, because she was not actually
terminated until May 12, 2009, her PHRC complaint was a factor in
SEPTA's decision to issue the Termination Letter.  But it is

---

[10] Indeed, Warfield conceded that while she was at SEPTA she had
never received such a call, _id._ at 234:8-12, but "believe[d]"
such a call would have been made to someone in the SEPTA
organization.  _Id._ at lines 21-22.  Obviously, Warfield's
speculation on this point is inadmissible as she palpably had no
"personal knowledge of the matter."  Fed. R. Evid. 602.

pellucid from the record that SEPTA decided to fire her <u>before</u> it was aware that Warfield had filed a complaint with the PHRC.

Thus, Warfield has failed to make a <u>prima facie</u> showing of retaliation on the part of defendants, and her retaliation claim must also fail. And even if she had been able to make a <u>prima facie</u> showing of retaliation, defendants have provided a legitimate, non-discriminatory reason for her dismissal, and plaintiff has failed to demonstrate that their reasons were pretextual.

**III.  <u>Conclusion</u>**

Because Warfield neither established her <u>prima facie</u> case for her disparate treatment discrimination claims, nor a <u>prima facie</u> case for her retaliation claims, and has not demonstrated that defendants' legitimate, nondiscriminatory reasons for dismissing her were pretextual, we will grant defendants' motion for summary judgment and enter Judgment in favor of them.

BY THE COURT:

__\s\Stewart Dalzell